UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

ROBERT M. HADDOCK,

       Plaintiff-Appellant,

v.

KENNETH S. APFEL, Commissioner,
Social Security Administration,

       Defendant-Appellee.

No. 98-7063

ORDER
Filed November 9, 1999

Before **BALDOCK**, **EBEL**, and **MURPHY**, Circuit Judges.


     Upon consideration, appellee's petition for rehearing is denied. However, the court on its own motion has determined that the opinion filed on July 13, 1999, should be modified. A modified opinion is attached.


                          Entered for the Court
                          PATRICK FISHER, Clerk

                          By:
                              Keith Nelson
                              Deputy Clerk

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 13 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

ROBERT M. HADDOCK,

   Plaintiff-Appellant,

v.

KENNETH S. APFEL, Commissioner,
Social Security Administration,  *

   Defendant-Appellee.

No. 98-7063

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA
(D.C. No. 97-CV-35-S)**

---

Submitted on the briefs:

Paul F. McTighe, Jr. and Gayle L. Troutman, Tulsa, Oklahoma, for
Plaintiff-Appellant.

Bruce Green, United States Attorney; Tina M. Waddell, Chief Counsel, Region
VI; and Mary F. Lin, Assistant Regional Counsel, Office of the General Counsel,
Social Security Administration, Dallas, Texas, for Defendant-Appellee.

---

 *  Pursuant to Fed. R. App. P. 43(c), Kenneth S. Apfel is substituted for
John J. Callahan, former Acting Commissioner of Social Security, as the
defendant in this action.

Before **BALDOCK** , **EBEL** , and **MURPHY** , Circuit Judges. **

---

**EBEL** , Circuit Judge.

---

If a disability claimant shows that he can no longer perform any of his past jobs, he is disabled unless the administrative law judge (ALJ) finds that he can do some other kind of work. In this case, the ALJ found that claimant retained the residual functional capacity (RFC) only for sedentary work that would allow him to alternate sitting and standing and that was, at most, semi-skilled. In response to the ALJ's hypothetical question including these restrictions, a vocational expert (VE) summarily identified four jobs claimant ostensibly could perform. The Dictionary of Occupational Titles, which was not discussed at the hearing, indicates that these jobs generally require greater exertional capacity than the ALJ found this claimant to have. We hold that before an ALJ may rely on expert vocational evidence as substantial evidence to support a determination of nondisability, the ALJ must ask the expert how his or her testimony as to the exertional requirement of identified jobs corresponds with the Dictionary of

---

** After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Occupational Titles, and elicit a reasonable explanation for any discrepancy on this point. [1]

Disability Claim

Robert Haddock was born on January 6, 1942. He completed ten years of school. His past jobs included lead carpenter, school bus driver, school janitor, and lift-dump operator. He filed his claim for disability benefits on January 19, 1995, alleging that he became disabled in November 1992 due to hip problems, shortness of breath related to heart and lung problems, lack of strength, and residual chest pains resulting from a heart attack in May 1992.

The ALJ denied Mr. Haddock's claim at step five of the evaluation sequence. See generally Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988). He decided at step four that Mr. Haddock did not have the residual functional capacity (RFC) to return to either of his relevant past jobs–the skilled, heavy job of lead carpenter or the unskilled, medium job of school janitor. At step five, the ALJ found that Mr. Haddock nevertheless retained the RFC to perform sedentary work if he could alternate sitting and standing. He further found that Mr. Haddock had skills transferable to semi-skilled work, had a

_____

[1]     Although appellant raises four issues on appeal, we have determined that this is the only issue that warrants discussion. Her other arguments are without merit.

limited or less education, and was closely approaching advanced age (as Mr. Haddock was just over fifty years old at the time his insured status expired). The VE testified that Mr. Haddock could perform four jobs: payroll clerk, parts clerk, materials lister, and inventory clerk. The VE did not volunteer the source of his information, nor did anyone at the hearing ask him to identify or discuss it. Lumping all four jobs together, the VE said that there were many thousands of these jobs in the regional and national economies. The ALJ decided that Mr. Haddock was not disabled in light of this expert vocational testimony and Rule 201.11 from the medical-vocational guidelines (the "grids"), 20 C.F.R. pt. 404, subpt. P, app. 2. The Appeals Council denied review, making the ALJ's denial of benefits the final agency decision. Mr. Haddock then brought this suit. The district court adopted the magistrate judge's recommendation to uphold the agency's decision. Mr. Haddock passed away on December 2, 1997. Mrs. Haddock appeals from the denial of his claim for disability benefits.

We have jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291. We review the agency's decision on the whole record to determine only whether the factual findings are supported by substantial evidence and the correct legal standards were applied. See Goatcher v. United States Dep't of Health & Human Servs., 52 F.3d 288, 289 (10th Cir. 1995).

Mrs. Haddock argues on appeal that, of the four jobs identified by the VE, only payroll clerk is described in the Dictionary of Occupational Titles as a sedentary, semi-skilled job to match the exertional and skill restrictions the ALJ found Mr. Haddock to have. See Dictionary of Occupational Titles 215.382-014. She alleges that parts clerk jobs are described in the Dictionary as either light and skilled, or heavy and semi-skilled. See id. 222.367-042, 249.367-058, 279.357-062. She asserts that inventory clerk and materials lister jobs are described as light and skilled, or medium and semi-skilled. See id. 219.387-030, 222.387-026. Mrs. Haddock contends that the VE's testimony that Mr. Haddock could perform the jobs of parts clerk, inventory clerk, and materials lister does not constitute substantial evidence because of the contradiction between the Dictionary's description of the exertional and skill requirements of these three jobs and the restrictions the VE was obliged to assume (because the ALJ presented them to the VE in his hypothetical question). She maintains that the lone job that was accurately identified–that of payroll clerk--does not salvage the ALJ's denial of benefits because the ALJ failed to ask the VE to specify how many of that particular job exists, and the evidence as to that type of job was therefore insufficiently developed to constitute substantial evidence to support the ALJ's decision that Mr. Haddock was not disabled.

<u>Discussion</u>

It is axiomatic that all of the ALJ's required findings must be supported by substantial evidence. <u>See</u> 42 U.S.C. § 405(g). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). At steps four and five, the ALJ is required to make a number of findings.

At step four, the ALJ must "'assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] residual functional capacity for work activity on a regular and continuing basis.'" <u>Winfrey v. Chater</u>, 92 F.3d 1017, 1023 (10th Cir. 1996) (quoting 20 C.F.R. § 404.1545(b)). If the ALJ concludes that the claimant cannot perform any of his past work with his remaining RFC, the ALJ bears the burden at step five to show that there are jobs in the regional or national economies that the claimant can perform with the limitations the ALJ has found him to have. <u>See, e.g.</u>, <u>Thompson v. Sullivan</u>, 987 F.2d 1482, 1487 (10th Cir. 1993) (citing, inter alia, 42 U.S.C. § 423(d)(2)(A)). It is not the claimant's burden to produce or develop vocational evidence at step five. <u>See</u> <u>id.</u> at 1491.

When a claimant's exertional level, age, education, and skill level (i.e., work experience) fit precisely within the criteria of a grid rule, an ALJ may base

a determination of nondisability conclusively on the grids.    See Trimiar v.

Sullivan , 966 F.2d 1326, 1332 (10th Cir. 1992);    see also 20 C.F.R. pt. 404,

subpt. P, app. 2, § 200.00(a) & Table No. 1; Social Security Ruling 82-41, 1982

WL 31389, at *1.  When a requirement to alternate sitting and standing limits a

claimant's ability to do the full range of sedentary work, as in this case, an ALJ

may not rely on this shortcut method.    See Thompson , 987 F.2d at 1488;

20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e).  In a case like this one, the ALJ

"must cite examples of occupations or jobs the individual can do and provide a

statement of the incidence of such work in the region where the individual lives

or in several regions of the country."  Social Security Ruling 96-9p, 1996 WL

374185, at *5;  see also Social Security Ruling 83-14, 1983 WL 31254, at *6;

Social Security Ruling 83-12, 1983 WL 31253, at *5.  The requirement to

identify specific jobs the claimant can perform with the limitations the ALJ has

found him to have also pertains when the ALJ finds that the claimant has

acquired skills which will transfer to other work, as in this case.    See Social

Security Ruling 96-9p, 1996 WL 374185, at *4; Social Security Ruling 82-41,

1982 WL 31389, at *7.  Identified jobs must be shown to exist in "significant

numbers" in the regional or national economies.  42 U.S.C. § 423(d)(2)(A).  To

summarize, in a case like this one, the ALJ must find that the claimant retains a

particular exertional capacity, decide whether the claimant has acquired

transferable skills, identify specific jobs that the claimant can perform with the restrictions the ALJ has found the claimant to have, and verify that the jobs the claimant can do exist in significant numbers in the regional or national economies. All of these findings must be supported by substantial evidence.

What the agency's regulations and rulings require an ALJ to do, or even allow an ALJ to do, to produce substantial vocational evidence at step five is not clear. 20 C.F.R. § 404.1566(d)(1) states that "[w]hen [the agency] determines that unskilled, sedentary, light, and medium jobs exist in the national economy . . ., [the agency] will take administrative notice of reliable job information available from various governmental and other publications[, including the] Dictionary of Occupational Titles." This subsection suggests that an ALJ, since he or she has the burden at step five, must correlate a VE's testimony in an individual case with vocational information provided in the Dictionary of Occupational Titles or other reliable publications. We have previously indicated such an understanding of § 404.1566(d)(1) in dicta in Campbell v. Bowen, 822 F.2d 1518, 1523 & n.3 (10th Cir. 1987).

Subsection 404.1566(e), however, allows an ALJ to use a vocational expert "[i]f the issue in determining whether [the claimant is] disabled is whether [the claimant's] work skills can be used in other work and the specific occupations in which they can be used, or there is a similarly complex issue." The relationship

between § 404.1566(d) and (e), and how these subsections should be applied to particular cases, is not clarified to any great extent by the agency's other regulations or rulings.

At this point, we narrow our focus. Although Mrs. Haddock complains that the VE's testimony conflicted with the Dictionary of Occupational Titles as to both the exertional and skill requirements of the jobs the VE identified, we hold that the ALJ did not elicit enough evidence with regard to skills for us to assess whether there is a conflict between the Dictionary and the VE's testimony on that job characteristic. By the same token, we cannot say that the ALJ's conclusion that the identified jobs met the semi-skilled restriction he found the claimant to have is supported by substantial evidence.

The Dictionary uses a different and considerably more extensive classification scheme for skill requirements than the agency's regulations. Compare  Dictionary at xv & App. C, ¶¶ II, III     with  20 C.F.R. § 404.1568. Section 404.1568 indicates that an ALJ should use information provided by the Dictionary to assess occupational skill requirements, but it is evident that the Dictionary's information about skills must be massaged, if you will, into the agency's three classifications (unskilled, semi-skilled, skilled). The ALJ did not ask the VE to explain his thought process, but settled for a summary conclusion. We therefore limit the rest of our discussion to exertional requirements.

Both the Dictionary and the agency's regulations use the same designations--sedentary, light, etc.--for exertional requirements. <u>See</u> 20 C.F.R. § 404.1567. We therefore can assess whether the VE's testimony, limited as it was to sedentary jobs by the ALJ's hypothetical, conflicts with the Dictionary as to the exertional requirements of the jobs of parts clerk, materials lister, and inventory clerk. There is a conflict here, and we find it unnecessary to parse the regulations and rulings to reach the conclusion that the ALJ should have asked the expert how his testimony as to the exertional requirement of these three jobs corresponded with the Dictionary of Occupational Titles, and elicited a reasonable explanation for the discrepancy on this point, before he relied on the expert's opinion that claimant could perform these three jobs.

The agency uses the Dictionary, among other publications listed in § 1566(d), as source material when it formulates the grids for use at step five. <u>See</u> Social Security Ruling 83-10, 1983 WL 31251, at *3 (citing 20 C.F.R. § 404.1566(d)); <u>see also</u> 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(b). The agency has also stated in a number of its rulings that an ALJ may use the Dictionary or other "authoritative" publications, rather than an expert, to provide vocational evidence at step five in some cases in which the grids may not be employed. Social Security Ruling 96-9p, 1996 WL 374185, at *9; <u>see also</u> Social Security Ruling 85-15, 1985 WL 56857, at *3; Social Security Ruling 83-14,

1983 WL 31254, at *4; Social Security Ruling 83-12, 1983 WL 31253, at *2; Social Security Ruling 82-41, 1982 WL 31389, at *2, *7. Most importantly, the agency accepts the Dictionary's definitions as reliable evidence at step four of "the functional demands and job duties" of a claimant's past job "as it is usually performed in the national economy." Social Security Ruling 82-61, 1982 WL 31387, at *2; see also Andrade v. Secretary of Health & Human Servs., 985 F.2d 1045, 1051 (10th Cir. 1993). Determining "the functional demands and job duties" of specific jobs and matching those requirements to a claimant's limitations is the very task the ALJ must undertake at step five. It would be anomalous to read the agency's regulations to allow an ALJ to disregard the Dictionary at step five--where the ALJ bears the burden–when the ALJ is allowed to rely conclusively on essentially the same information from the Dictionary at step four.

To relieve the ALJ of the burden to thoroughly develop the vocational evidence at step five would shift the burden to the claimant in the form of a requirement to cross-examine the vocational expert. To do so would contravene basic principles of social security law, however. First, "[i]t is not [the claimant's] burden to prove [h]e cannot work at any level lower than h[is] past relevant work; it is the [agency's] burden to prove that [h]e can." Thompson, 987 F.2d at 1491. To allow an ALJ to elicit and rely on summary conclusions

-11-

given by a VE, in the absence of contrary testimony elicited by the claimant through cross-examination, would amount to shifting the burden to produce and develop vocational evidence back to the claimant. Cf. id. ("The ALJ's reliance on an omission [in the record] effectively shifts the burden back to the claimant.")

Second, "[i]t is well established that a Social Security disability hearing is a nonadversarial proceeding." Id. (quotation omitted); see also, e.g., Heckler v. Campbell, 461 U.S. 458, 471 (1983) (Brennan, J., concurring). Claimants have a right to cross-examine vocational experts as a part of procedural due process. See Glass v. Shalala, 43 F.3d 1392, 1396 (10th Cir. 1994) (citing Perales, 402 U.S. at 402, 410). Cross-examination is nevertheless an adversarial procedure. See, e.g., Cooks v. Ward, 165 F.3d 1283, 1296 (10th Cir. 1998) (citing United States v. Cronic, 466 U.S. 648, 659 (1984)), cert. denied, 1999 WL 319436 (U.S. Oct. 4, 1999) (No. 98-9420). Social security claimants may be unrepresented or represented by someone who is unfamiliar with social security law. But cross-examining a vocational expert with a publication such as the Dictionary of Occupational Titles is clearly a matter for someone well versed in social security law, not a layman. For these reasons, we believe the role of cross-examination in

disability proceedings should remain limited.[2] Cf. Hodge v. West, 155 F.3d 1356, 1362-63 (Fed. Cir. 1998) ("In such a beneficial structure [as the nonadversarial system of awarding veterans' benefits] there is no room for such adversarial concepts as cross examination, best evidence rule, hearsay evidence exclusion, or strict adherence to burden of proof." (quotation omitted)).

---

[2]     It may be argued that we suggested in Gay v. Sullivan that the claimant bears the burden to cross-examine a vocational expert concerning information in a publication, because we stated that 20 C.F.R. § 404.1566(d) and (e) "offer alternative avenues of proof" and that "sources of expert testimony . . . may be tested by cross-examination." 986 F.2d 1336, 1340 & n.2 (10th Cir. 1993). The issue in Gay, however, was the legitimacy of a vocational expert relying on a publication not specifically listed in § 1566(d), not an alleged inconsistency between the VE's conclusions and information in a listed publication. Read in context of the issue it decided, Gay holds that a vocational expert is not limited to the sources named in § 1566(d), but that expert vocational testimony may be used to "reach beyond matters already established through administrative (or judicial) notice" of information provided by those recognized publications. 986 F.2d at 1340. In other words, expert testimony may be used to verify, clarify, and supplement information available in publications the agency has deemed reliable. The claimant's failure in that case to cross-examine the vocational expert about her non-listed source publication made it impossible for this court to assess on appeal whether the VE's testimony was unreliable. See id. at 1340 & n.2.

Gay has been given a broader interpretation than that in two cases that dealt with an alleged inconsistency between an expert's testimony and information in the Dictionary of Occupational Titles. See Adams v. Apfel, No. 97-5140, 1998 WL 99030, at **2 (10th Cir. Mar. 9, 1998) (order and judgment); Prince v. Apfel, No. 97-5176, 1998 WL 317525, at **3 (10th Cir. June 11, 1998) (order and judgment). Those cases are unpublished, however, and this panel is not bound by them. Nothing in Gay precludes us from concluding now that the ALJ has the burden to investigate whether a vocational expert's opinion conflicts with information provided in the Dictionary of Occupational Titles, and elicit an explanation for any inconsistency.

Third, regardless of what step is under evaluation, an ALJ has a duty to fully develop the record--even when the claimant is represented by an attorney, as in this case. See Thompson , 987 F.2d at 1492. Questioning a vocational expert about the source of his opinion and any deviations from a publication recognized as authoritative by the agency's own regulations falls within this duty. Our holding as much at step five is consistent with the requirement at steps three and four that an ALJ establish the predicate facts for his conclusions. See Winfrey , 92 F.3d at 1024 (step four case); Clifton v. Chater , 79 F.3d 1007, 1009-10 (10th Cir. 1996) (step three case).

Finally, we note that our decision on this issue is consistent with the majority of circuits to have considered it. See Porch v. Chater , 115 F.3d 567, 571-72 (8th Cir. 1997); Johnson v. Shalala , 60 F.3d 1428, 1435 (9th Cir. 1995); English v. Shalala , 10 F.3d 1080, 1085 (4th Cir. 1993); Tom v. Heckler , 779 F.2d 1250, 1255-56 (7th Cir. 1985); Mimms v. Heckler , 750 F.2d 180, 186 (2d Cir. 1984). The Eleventh Circuit has held that a vocational expert's testimony "trumps" the Dictionary of Occupational Titles in the event of a conflict, but it did so in the context of a claim in which there was no conflict. Jones v. Apfel , No. 98-6797, 1999 WL 770701, at *5-*6 (11th Cir. Sept. 29, 1999). Only the Sixth Circuit has held that an ALJ may unreservedly accept a VE's testimony at step five even if it contradicts the Dictionary of Occupational Titles. See Conn

-14-

v. Secretary of Health & Human Servs. , 51 F.3d 607, 610 (6th Cir. 1995). We are unpersuaded that the Sixth Circuit's approach is consistent with the broader principles that govern these nonadversarial proceedings.

We do not mean by our holding that the Dictionary of Occupational Titles "trumps" a VE's testimony when there is a conflict about the nature of a job. We hold merely that the ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability. One reasonable explanation would be that the job the VE is testifying about is not included in the Dictionary, but is documented in some other acceptable source. See Johnson , 60 F.3d at 1435 (noting Dictionary states that it is not comprehensive); Wright v. Sullivan , 900 F.2d 675, 683-84 (3d Cir. 1990) (same). Another valid explanation would be that a specified number or percentage of a particular job is performed at a lower RFC level than the Dictionary shows the job generally to require. See, e.g. , Fenton v. Apfel , 149 F.3d 907, 911 (8th Cir. 1998) (explaining that Dictionary gives maximum requirements of job as generally performed, not range of requirements as job is performed in various particular settings); Barker v. Shalala , 40 F.3d 789, 795 (6th Cir. 1994) (same).

In this case, the ALJ found that Mr. Haddock was limited to sedentary, semi-skilled work that would allow him to alternate sitting and standing. The case must be remanded for the ALJ to investigate whether there is a significant number of specific jobs Mr. Haddock could have done with his limitations.

The judgment of the United States District Court for the Eastern District of Oklahoma is REVERSED, and the case is REMANDED with instructions for the district court to remand to the agency for additional proceedings.

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 13 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ROBERT M. HADDOCK,

        Plaintiff-Appellant,

v.

KENNETH S. APFEL, Commissioner,
Social Security Administration,    *

        Defendant-Appellee.

No. 98-7063

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**
**(D.C. No. 97-CV-35-S)**

---

Submitted on the briefs:

Paul F. McTighe, Jr. and Gayle L. Troutman, Tulsa, Oklahoma, for
Plaintiff-Appellant.

Bruce Green, United States Attorney; Tina M. Waddell, Chief Counsel, Region
VI; and Mary F. Lin, Assistant Regional Counsel, Office of the General Counsel,
Social Security Administration, Dallas, Texas, for Defendant-Appellee.

---

\*     Pursuant to Fed. R. App. P. 43(c), Kenneth S. Apfel is substituted for
John J. Callahan, former Acting Commissioner of Social Security, as the
defendant in this action.

Before **BALDOCK**, **EBEL**, and **MURPHY**, Circuit Judges. **

_____

**EBEL**, Circuit Judge.

_____

If a disability claimant shows that he can no longer perform any of his past jobs, he is disabled unless the administrative law judge (ALJ) finds that he can do some other kind of work. In this case, the ALJ found that claimant retained the residual functional capacity (RFC) only for sedentary work that would allow him to alternate sitting and standing and that was, at most, semi-skilled. In response to the ALJ's hypothetical question including these restrictions, a vocational expert (VE) summarily identified four jobs claimant ostensibly could perform. The Dictionary of Occupational Titles, which was not discussed at the hearing, indicates that these jobs generally require greater exertional capacity than the ALJ found this claimant to have. We hold that before an ALJ may rely on expert vocational evidence as substantial evidence to support a determination of nondisability, the ALJ must ask the expert how his or her testimony as to the exertional requirement of identified jobs corresponds with the Dictionary of

_____

** After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

-2-

Occupational Titles, and elicit a reasonable explanation for any discrepancy on this point. [1]

Disability Claim

Robert Haddock was born on January 6, 1942. He completed ten years of school. His past jobs included lead carpenter, school bus driver, school janitor, and lift-dump operator. He filed his claim for disability benefits on January 19, 1995, alleging that he became disabled in November 1992 due to hip problems, shortness of breath related to heart and lung problems, lack of strength, and residual chest pains resulting from a heart attack in May 1992.

The ALJ denied Mr. Haddock's claim at step five of the evaluation sequence. See generally Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988). He decided at step four that Mr. Haddock did not have the residual functional capacity (RFC) to return to either of his relevant past jobs–the skilled, heavy job of lead carpenter or the unskilled, medium job of school janitor. At step five, the ALJ found that Mr. Haddock nevertheless retained the RFC to perform sedentary work if he could alternate sitting and standing. He further found that Mr. Haddock had skills transferable to semi-skilled work, had a

---

[1]     Although appellant raises four issues on appeal, we have determined that this is the only issue that warrants discussion. Her other arguments are without merit.

limited or less education, and was closely approaching advanced age (as Mr. Haddock was just over fifty years old at the time his insured status expired). The VE testified that Mr. Haddock could perform four jobs: payroll clerk, parts clerk, materials lister, and inventory clerk. The VE did not volunteer the source of his information, nor did anyone at the hearing ask him to identify or discuss it. Lumping all four jobs together, the VE said that there were many thousands of these jobs in the regional and national economies. The ALJ decided that Mr. Haddock was not disabled in light of this expert vocational testimony and Rule 201.11 from the medical-vocational guidelines (the "grids"), 20 C.F.R. pt. 404, subpt. P, app. 2. The Appeals Council denied review, making the ALJ's denial of benefits the final agency decision. Mr. Haddock then brought this suit. The district court adopted the magistrate judge's recommendation to uphold the agency's decision. Mr. Haddock passed away on December 2, 1997. Mrs. Haddock appeals from the denial of his claim for disability benefits.

We have jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291. We review the agency's decision on the whole record to determine only whether the factual findings are supported by substantial evidence and the correct legal standards were applied. See Goatcher v. United States Dep't of Health & Human Servs., 52 F.3d 288, 289 (10th Cir. 1995).

## Issue on Appeal

Mrs. Haddock argues on appeal that, of the four jobs identified by the VE, only payroll clerk is described in the Dictionary of Occupational Titles as a sedentary, semi-skilled job to match the exertional and skill restrictions the ALJ found Mr. Haddock to have.    See Dictionary of Occupational Titles 215.382-014. She alleges that parts clerk jobs are described in the Dictionary as either light and skilled, or heavy and semi-skilled.    See id. 222.367-042, 249.367-058, 279.357-062.  She asserts that inventory clerk and materials lister jobs are described as light and skilled, or medium and semi-skilled.    See id. 219.387-030, 222.387-026.  Mrs. Haddock contends that the VE's testimony that Mr. Haddock could perform the jobs of parts clerk, inventory clerk, and materials lister does not constitute substantial evidence because of the contradiction between the Dictionary's description of the exertional and skill requirements of these three jobs and the restrictions the VE was obliged to assume (because the ALJ presented them to the VE in his hypothetical question).  She maintains that the lone job that was accurately identified–that of payroll clerk--does not salvage the ALJ's denial of benefits because the ALJ failed to ask the VE to specify how many of that particular job exists, and the evidence as to that type of job was therefore insufficiently developed to constitute substantial evidence to support the ALJ's decision that Mr. Haddock was not disabled.

## Discussion

It is axiomatic that all of the ALJ's required findings must be supported by substantial evidence. See 42 U.S.C. § 405(g). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). At steps four and five, the ALJ is required to make a number of findings.

At step four, the ALJ must "'assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] residual functional capacity for work activity on a regular and continuing basis.'" Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996) (quoting 20 C.F.R. § 404.1545(b)). If the ALJ concludes that the claimant cannot perform any of his past work with his remaining RFC, the ALJ bears the burden at step five to show that there are jobs in the regional or national economies that the claimant can perform with the limitations the ALJ has found him to have. See, e.g., Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citing, inter alia, 42 U.S.C. § 423(d)(2)(A)). It is not the claimant's burden to produce or develop vocational evidence at step five. See id. at 1491.

When a claimant's exertional level, age, education, and skill level (i.e., work experience) fit precisely within the criteria of a grid rule, an ALJ may base

a determination of nondisability conclusively on the grids.        See Trimiar v.

Sullivan, 966 F.2d 1326, 1332 (10th Cir. 1992);     see also 20 C.F.R. pt. 404,

subpt. P, app. 2, § 200.00(a) & Table No. 1; Social Security Ruling 82-41, 1982

WL 31389, at *1.  When a requirement to alternate sitting and standing limits a

claimant's ability to do the full range of sedentary work, as in this case, an ALJ

may not rely on this shortcut method.     See Thompson, 987 F.2d at 1488;

20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e).  In a case like this one, the ALJ

"must cite examples of occupations or jobs the individual can do and provide a

statement of the incidence of such work in the region where the individual lives

or in several regions of the country."  Social Security Ruling 96-9p, 1996 WL

374185, at *5;  see also Social Security Ruling 83-14, 1983 WL 31254, at *6;

Social Security Ruling 83-12, 1983 WL 31253, at *5.  The requirement to

identify specific jobs the claimant can perform with the limitations the ALJ has

found him to have also pertains when the ALJ finds that the claimant has

acquired skills which will transfer to other work, as in this case.     See Social

Security Ruling 96-9p, 1996 WL 374185, at *4; Social Security Ruling 82-41,

1982 WL 31389, at *7.  Identified jobs must be shown to exist in "significant

numbers" in the regional or national economies.  42 U.S.C. § 423(d)(2)(A).  To

summarize, in a case like this one, the ALJ must find that the claimant retains a

particular exertional capacity, decide whether the claimant has acquired

-7-

transferable skills, identify specific jobs that the claimant can perform with the restrictions the ALJ has found the claimant to have, and verify that the jobs the claimant can do exist in significant numbers in the regional or national economies. All of these findings must be supported by substantial evidence.

What the agency's regulations and rulings require an ALJ to do, or even allow an ALJ to do, to produce substantial vocational evidence at step five is not clear. 20 C.F.R. § 404.1566(d)(1) states that "[w]hen [the agency] determines that unskilled, sedentary, light, and medium jobs exist in the national economy . . ., [the agency] will take administrative notice of reliable job information available from various governmental and other publications[, including the] Dictionary of Occupational Titles." This subsection suggests that an ALJ, since he or she has the burden at step five, must correlate a VE's testimony in an individual case with vocational information provided in the Dictionary of Occupational Titles or other reliable publications. We have previously indicated such an understanding of § 404.1566(d)(1) in dicta in     Campbell v. Bowen  , 822 F.2d 1518, 1523 & n.3 (10th Cir. 1987).

Subsection 404.1566(e), however, allows an ALJ to use a vocational expert "[i]f the issue in determining whether [the claimant is] disabled is whether [the claimant's] work skills can be used in other work and the specific occupations in which they can be used, or there is a similarly complex issue." The relationship

between § 404.1566(d) and (e), and how these subsections should be applied to particular cases, is not clarified to any great extent by the agency's other regulations or rulings.

At this point, we narrow our focus. Although Mrs. Haddock complains that the VE's testimony conflicted with the Dictionary of Occupational Titles as to both the exertional and skill requirements of the jobs the VE identified, we hold that the ALJ did not elicit enough evidence with regard to skills for us to assess whether there is a conflict between the Dictionary and the VE's testimony on that job characteristic. By the same token, we cannot say that the ALJ's conclusion that the identified jobs met the semi-skilled restriction he found the claimant to have is supported by substantial evidence.

The Dictionary uses a different and considerably more extensive classification scheme for skill requirements than the agency's regulations. Compare Dictionary at xv & App. C, ¶¶ II, III     with 20 C.F.R. § 404.1568. Section 404.1568 indicates that an ALJ should use information provided by the Dictionary to assess occupational skill requirements, but it is evident that the Dictionary's information about skills must be massaged, if you will, into the agency's three classifications (unskilled, semi-skilled, skilled). The ALJ did not ask the VE to explain his thought process, but settled for a summary conclusion. We therefore limit the rest of our discussion to exertional requirements.

Both the Dictionary and the agency's regulations use the same designations--sedentary, light, etc.--for exertional requirements.  See 20 C.F.R. § 404.1567.  We therefore can assess whether the VE's testimony, limited as it was to sedentary jobs by the ALJ's hypothetical, conflicts with the Dictionary as to the exertional requirements of the jobs of parts clerk, materials lister, and inventory clerk.  There is a conflict here, and we find it unnecessary to parse the regulations and rulings to reach the conclusion that the ALJ should have asked the expert how his testimony as to the exertional requirement of these three jobs corresponded with the Dictionary of Occupational Titles, and elicited a reasonable explanation for the discrepancy on this point, before he relied on the expert's opinion that claimant could perform these three jobs.

Among the publications listed in § 1566(d), the Dictionary of Occupational Titles holds a singularly prominent place in disability proceedings.  The agency uses the Dictionary, among other publications, as source material when it formulates the grids for use at step five.  See Social Security Ruling 83-10, 1983 WL 31251, at *3 (citing 20 C.F.R. § 404.1566(d));  see also 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(b).  The agency has also stated in a number of its rulings that an ALJ may use the Dictionary, rather than an expert, to provide vocational evidence at step five in some cases in which the grids may not be employed.  See Social Security Ruling 96-9p, 1996 WL 374185, at *9; Social

Security Ruling 85-15, 1985 WL 56857, at *3; Social Security Ruling 83-14, 1983 WL 31254, at *4; Social Security Ruling 83-12, 1983 WL 31253, at *2; Social Security Ruling 82-41, 1982 WL 31389, at *2, *7. Most importantly, the agency accepts the Dictionary's definitions as reliable evidence at step four of "the functional demands and job duties" of a claimant's past job "as it is usually performed in the national economy." Social Security Ruling 82-61, 1982 WL 31387, at *2; see also Andrade v. Secretary of Health & Human Servs., 985 F.2d 1045, 1051 (10th Cir. 1993). Determining "the functional demands and job duties" of specific jobs and matching those requirements to a claimant's limitations is the very task the ALJ must undertake at step five. It would be anomalous to read the agency's regulations to allow an ALJ to disregard the Dictionary at step five--where the ALJ bears the burden–when the ALJ is allowed to rely conclusively on essentially the same information from the Dictionary at step four.

To relieve the ALJ of the burden to thoroughly develop the vocational evidence at step five would shift the burden to the claimant in the form of a requirement to cross-examine the vocational expert. To do so would contravene basic principles of social security law, however. First, "[i]t is not [the claimant's] burden to prove [h]e cannot work at any level lower than h[is] past relevant work; it is the [agency's] burden to prove that [h]e can." Thompson,

-11-

987 F.2d at 1491. To allow an ALJ to elicit and rely on summary conclusions given by a VE, in the absence of contrary testimony elicited by the claimant through cross-examination, would amount to shifting the burden to produce and develop vocational evidence back to the claimant. Cf. id. ("The ALJ's reliance on an omission [in the record] effectively shifts the burden back to the claimant.")

Second, "[i]t is well established that a Social Security disability hearing is a nonadversarial proceeding." Id. (quotation omitted); see also, e.g. , Heckler v. Campbell , 461 U.S. 458, 471 (1983) (Brennan, J., concurring) . Claimants have a right to cross-examine vocational experts as a part of procedural due process. See Glass v. Shalala , 43 F.3d 1392, 1396 (10th Cir. 1994) (citing Perales , 402 U.S. at 402, 410). Cross-examination is nevertheless an adversarial procedure. See, e.g. , Cooks v. Ward , 165 F.3d 1283, 1296 (10th Cir. 1998) (citing United States v. Cronic , 466 U.S. 648, 659 (1984), petition for cert. filed (U.S. May 14, 1999) (No. 98-9420)). Social security claimants may be unrepresented or represented by someone who is unfamiliar with social security law. But cross-examining a vocational expert with a publication such as the Dictionary of Occupational Titles is clearly a matter for someone well versed in social security law, not a layman. For these reasons, we believe the role of cross-examination in

disability proceedings should remain limited. [2] Cf. Hodge v. West , 155 F.3d 1356, 1362-63 (Fed. Cir. 1998) ("In such a beneficial structure [as the nonadversarial system of awarding veterans' benefits] there is no room for such adversarial concepts as cross examination, best evidence rule, hearsay evidence exclusion, or strict adherence to burden of proof." (quotation omitted)).

Third, regardless of what step is under evaluation, an ALJ has a duty to fully develop the record--even when the claimant is represented by an attorney, as in this case. See Thompson , 987 F.2d at 1492. Questioning a vocational expert about the source of his opinion and any deviations from a publication recognized as authoritative by the agency's own regulations falls within this duty. Our holding as much at step five is consistent with the requirement at steps three and four that an ALJ establish the predicate facts for his conclusions. See Winfrey ,

---

[2] It may be argued that we suggested otherwise in Gay v. Sullivan , 986 F.2d 1336, 1340 & n.2 (10th Cir. 1993), where we stated that 20 C.F.R. § 404.1566(d) and (e) "offer alternative avenues of proof" and that "sources of expert testimony . . . may be tested by cross-examination." Read in context of the issue it decided, however, Gay merely holds that expert vocational testimony may be used to "reach beyond matters already established through administrative (or judicial) notice" of information provided by reliable publications. In other words, expert testimony may be used to verify, clarify, and supplement information available in publications. Nothing in that discussion precludes us from concluding now that the ALJ has the burden to investigate and explain any deviations between a vocational expert's opinion and conflicting information provided in the Dictionary of Occupational Titles.

92 F.3d at 1024 (step four case); Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (step three case).

Finally, we note that our decision on this issue is consistent with the majority of circuits to have considered it. See Porch v. Chater, 115 F.3d 567, 571-72 (8th Cir. 1997); Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995); English v. Shalala, 10 F.3d 1080, 1085 (4th Cir. 1993); Tom v. Heckler, 779 F.2d 1250, 1255-56 (7th Cir. 1985); Mimms v. Heckler, 750 F.2d 180, 186 (2d Cir. 1984). Only the Sixth Circuit has held that an ALJ may unreservedly accept a VE's testimony at step five even if it contradicts the Dictionary of Occupational Titles. See Conn v. Secretary of Health & Human Servs., 51 F.3d 607, 610 (6th Cir. 1995).

We do not mean by our holding that the Dictionary of Occupational Titles "trumps" a VE's testimony when there is a conflict about the nature of a job. We hold merely that the ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability.

In this case, the ALJ found that Mr. Haddock was limited to sedentary, semi-skilled work that would allow him to alternate sitting and standing. The

case must be remanded for the ALJ to investigate whether there is a significant number of specific jobs Mr. Haddock could have done with his limitations.

The judgment of the United States District Court for the Eastern District of Oklahoma is REVERSED, and the case is REMANDED with instructions for the district court to remand to the agency for additional proceedings.