**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 15 2003**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

PEARLENE THUNDERBULL,

    Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Commissioner, Social Security
Administration,

    Defendant-Appellee.

No. 03-6030
(D.C. No. CIV-01-1240-R)
(W.D. Okla.)

---

ORDER AND JUDGMENT   *

---

Before **SEYMOUR** , **BRISCOE** , and **LUCERO** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

\*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Claimant Pearlene Thunderbull appeals the Social Security Commissioner's denial of her application for social security disability insurance benefits. The district court adopted the magistrate judge's twenty-page report and recommendation and affirmed the Commissioner's ruling. After reviewing the Commissioner's decision to determine whether her factual findings were supported by substantial evidence in light of the entire record and to determine whether she applied the correct legal standards, we affirm. *See Castellano v. Sec'y of Health & Human Servs*., 26 F.3d 1027, 1028 (10th Cir. 1994). The magistrate judge's report and recommendation fully sets forth the detailed facts, and we only briefly repeat them here.

Claimant filed her application in February 1997, alleging an inability to work since September 9, 1996, due to a history of seizure activity, noninsulin dependent diabetes mellitus, stable angina pectoris, shortness of breath, carpal tunnel syndrome, and a healed fracture of the left forearm. Following a hearing, the administrative law judge (ALJ) determinated that this combination of impairments was severe, but that her conditions did not meet or equal any of the listed impairments. The ALJ then determined that claimant retained the residual functional capacity (RFC) to perform the exertional demands of medium work because she can lift and carry up to fifty pounds occasionally and up to twenty-five pounds on a regular basis and does not have any nonexertional limitations

that narrow the range of work she can do. The ALJ therefore determined, at step four of the five-step sequential analysis, that claimant could return to her past relevant work as a housekeeper/maid, as that job is performed in the national economy. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing five-step evaluation process).

On appeal, claimant first contends that she does not retain the RFC to perform medium work and that the ALJ erred by failing to properly consider the opinion of her treating physician, Dr. Kale. Dr. Kale completed a medical source statement in 1998 stating in part that claimant was limited to only occasionally lifting or carrying less than ten pounds, to standing or walking less than one hour of an eight-hour day, and to only sitting for three hours of an eight-hour day. He also opined that claimant had nonexertional restrictions requiring precautions in exposure to heights, extreme changes in temperature, and using machinery because she is on seizure medication and has poorly controlled diabetes. Dr. Kale completed another medical source statement in 1999 stating in part that claimant's condition had deteriorated and she was now unable to lift or carry at all, could only stand or walk for three minutes, could only sit for thirty minutes, could not push or pull, and could never climb, balance, stoop, kneel, crouch, or crawl.

A treating source's opinion is to be given controlling weight only if it is "well supported by medically acceptable clinical and laboratory diagnostic

techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(d)(2); *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). It "'is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.'" *Watkins v. Barnhart*, __ F.3d __, __ , 2003 WL 22855009, at *2 (10th Cir. Dec. 2, 2003) (quoting SSR 96-2p, 1996 WL 374188, at *2).

If the ALJ decides that a treating source's opinion is not entitled to controlling weight, he must determine the weight it should be given after considering: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the treating source's opinion is supported by objective evidence; (4) whether the opinion is consistent with the record as a whole; (5) whether or not the treating source is a specialist in the area upon which an opinion is given; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. § 404.1527(d)(2)-(6); *Drapeau*, 255 F.3d at 1213.

Here, the ALJ concluded that Dr. Kale's opinion was not entitled to full weight because it did "not correspond with the medical evidence of record,

laboratory tests, examining sources, non-examining sources or pulmonary function studies." Aplt. App. Vol. I at 24. According to claimant's own testimony, Dr. Kale simply wrote down the limitations she described to him. *Id*., Vol. II at 500-501, 506-10. *See Rankin v. Apfel*, 195 F.3d 427, 430 (8th Cir. 1999) (holding that a treating physician's opinion was properly discredited because it was "based heavily on [claimant's] subjective complaints and [was] at odds with the weight of the objective evidence"). Further, as noted by the ALJ, Dr. Kale's opinion that claimant was restricted to less than sedentary work was contradicted by (1) pulmonary function studies that appeared normal and showed no restrictive or obstructive lung disease, and that claimant's activities were not limited by her shortness of breath, *id*., Vol. I at 212-229; Vol. II, at 402, 408-11; (2) medical examinations that showed she had a full cervical and lumbar range of motion, *id.*, Vol. I at 212-20, Vol. II. at 401, 404-06; (3) an examination that revealed no evidence of a neurological deficit that would explain her allegation, relied upon by Dr. Kale, that she frequently dropped objects, *id*., Vol. II at 402; (4) medical reports stating that her diabetes was poorly controlled due to her noncompliance with diet and blood sugar monitoring. The ALJ also noted the inconsistency between Dr. Kale's report that claimant has two to three seizures a day and claimant's statement that no one has ever seen her having a seizure. These are all sufficiently specific and legitimate reasons for giving less than full

weight to Dr. Kale's opinion. *See White v. Barnhart*, 287 F.3d 903, 907-08 (10th Cir. 2001).

Claimant argues that Dr. Swami's and Dr. Ennamuri's reports support Dr. Kale's assessment of her limitations. The ALJ fully discussed this evidence, and reached the opposite conclusion. The ALJ noted that Dr. Swami reported that claimant had a full range of motion in all areas and Dr. Ennamuri reported that she had a normal range of motion in her lumbar spine and that all her joints were all normal; that the pulmonary function studies performed by Dr. Swami did not indicate severe pulmonary obstruction; that Dr. Ennamuri found no neurological deficit to support claimant's assertion she frequently dropped things and that she had no limitation in movement, and that Dr. Swami observed that claimant failed to monitor her sugar levels or follow her diabetic diet. The ALJ's conclusion that these reports are inconsistent with Dr. Kale's opinion is supported by the record. Therefore, claimant has not shown that the ALJ erred in concluding that she retained the RFC to perform medium work.

Claimant next contends that the ALJ failed to evaluate properly her ability to return to her past relevant work. The claimant bears the burden at step four of proving she cannot return to her past relevant work, either as she performed it or as it is performed in the national economy. *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993). In *Winfrey v. Chater*, 92 F.3d 1017

(10th Cir. 1996), we examined the three phases in making a step-four determination:

> In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity (RFC), and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work. In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. At each of these phases, the ALJ must make specific findings.

*Id*. at 1023 (citations omitted). Claimant contends the ALJ erred in failing to make the required phase-two findings regarding the physical demands of her past relevant work as a housekeeper.

The record shows that the ALJ did consider the demands of claimant's past relevant work. At phase one, the ALJ found, based upon the RFC report of consulting physician Dr. Mungul, that claimant could perform the full range of medium work, defined as the ability to lift up to fifty pounds, with frequent lifting of up to twenty-five pounds, *see* 20 C.F.R. § 404.1567(c), and that claimant had no significant nonexertional impairments that narrowed the range of work she could perform. At phase two, the ALJ found that claimant's former job of housekeeping/maid was performed in the national economy at the medium exertional level. According to claimant, the housekeeping job she performed only required her to lift twenty-five pounds. The Dictionary of Occupational Titles (DOT) (4th ed. 1991), however, states that the job of housekeeper/maid is

performed in the national economy at the medium exertional level. *See* DOT § 323.687-010. The Commissioner accepts the DOT's definitions as reliable evidence at step four of the functional demands and job duties of claimant's past job as usually performed in national economy. *Haddock v. Apfel*, 196 F.3d 1084, 1090 (10th Cir. 1999). Because these demands are compatible with the ALJ's determination that she retained the RFC to perform medium work, the ALJ's conclusion that she could perform her past relevant work as it is performed in the national economy is supported by substantial evidence.

The judgment of the district court is AFFIRMED.


Entered for the Court


Mary Beck Briscoe
Circuit Judge