FILED

United States Court of Appeals
Tenth Circuit

**June 7, 2011**

Elisabeth A. Shumaker
Clerk of Court

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

ANGELA S. WEIGEL,

Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE,
Commissioner, Social Security
Administration,

Defendant-Appellee.

No. 10-5154
(D.C. No. 4:09-CV-00339-GKF-TLW)
(N.D. Okla.)

## ORDER AND JUDGMENT[*]

Before **MATHESON**, **McKAY** and **EBEL**, Circuit Judges.

Angela S. Weigel appeals from the district court's affirmance of the

Commissioner's denial of Supplemental Security Income (SSI) benefits. She

argues that the ALJ (1) failed to assess properly her residual functional capacity

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

(RFC);[1] (2) erred in finding she could perform work; and (3) failed to properly evaluate her credibility. Exercising jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g), we vacate the district court's decision and remand to that court with instructions to remand to the Commissioner to conduct further proceedings.

## I. BACKGROUND

Ms. Weigel was twenty-one years old when she applied for SSI benefits. She asserted disability beginning in October 2005 due to bipolar disorder, agoraphobia, and post-traumatic stress disorder (PTSD). After holding an evidentiary hearing, the administrative law judge (ALJ) denied benefits. The Appeals Council reversed and remanded for another hearing. After the second hearing, the ALJ again denied benefits. In doing so, he applied the five-step sequential evaluation process for determining disability. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (summarizing five-step process). At step 1, the ALJ found that Ms. Weigel had not engaged in substantial gainful employment since the date of her disability application, December 19, 2005. The ALJ next found at step 2 that Ms. Weigel suffered from three severe impairments: mood disorder, not otherwise specified; PTSD; and panic disorder with

---

[1]     RFC is "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(c).

agoraphobia. But the ALJ determined that these impairments did not meet or equal the criteria at step 3 for mental impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1, listings 12.04 and 12.06, because Ms. Weigel had only mild restriction in the activities of daily living; had moderate difficulties in social functioning and with concentration, persistence, or pace; and had experienced no episodes of decompensation. Rather, the ALJ determined at steps 4 and 5 that Ms. Weigel could perform a full range of work limited to simple work, including her past relevant work as a cashier and, alternatively, other work as a kitchen helper, hand packager, maid, sorter, assembler, and laborer.[2] The Appeals Council declined to review the ALJ's decision, making it the agency's final decision. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). On judicial review, the district court accepted the magistrate judge's recommendation and affirmed the denial of benefits. Ms. Weigel appeals.

## II. STANDARD OF REVIEW

Like the district court, "[w]e review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Cowan v. Astrue*, 552 F.3d 1182, 1184-85 (10th Cir. 2008) (quotation omitted). We do "not

---

[2] Although the ALJ alternatively found no disability at steps 4 and 5, the parties agree that this court must decide only whether the ALJ correctly found at step 5 that Ms. Weigel was not disabled.

reweigh the evidence or substitute our judgment for the Commissioner's."
*Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). In addition, an ALJ's failure to "provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotation omitted).

III. ANALYSIS

A. Residual Functional Capacity

Ms. Weigel first argues that the ALJ failed to assess properly her RFC, because the ALJ failed to (1) tie his restriction that she could perform only simple work to her three severe mental impairments; (2) address her limitations in social functioning evidenced by her three impairments, especially with regard to her ability to get along with co-workers and supervisors due to her panic attacks and anxiety, hyper-vigilance, and fear of harm from others; (3) address how the simple-work restriction encompassed his finding of moderate deficiencies in concentration, persistence, or pace; (4) explain how she would be able to perform simple work on a regular and continuing basis, considering her moderate restrictions in social functioning; (5) consider Dr. Crall's conclusion that her ability to complete tasks in an appropriate and timely manner was likely to be compromised by her difficulties with sustaining attention; (6) assess limitations in social functioning; (7) explain why he gave no weight to her Global Assessment

-4-

of Functioning (GAF) scores of 42 and 49,[3] (8) discuss her short-term work attempts; and (9) assess the effects of stress from panic attacks or PTSD on her ability to sustain work activity. We agree with Ms. Weigel that the ALJ failed to properly analyze her RFC.

"[T]he ALJ must make specific [RFC] findings." *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). And those findings "must be supported by substantial evidence." *Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999).

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence. . . . In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

Soc. Sec. R. 96-8p, 1996 WL 374184, at *7.

The ALJ's analysis does not meet these standards. He did not sufficiently set forth or consider relevant evidence, describe how the evidence supported his

---

[3] The GAF scale is used by clinicians to report an "individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (Text Revision 4th ed. 2000). A GAF of 41-50 indicates "[s]erious symptoms . . . OR any serious impairment in social[ or] occupational . . . functioning (e.g., no friends, unable to keep a job)." *Id.* at 34 (bolding omitted).

RFC conclusions, or describe Ms. Weigel's ability to engage in sustained work on a regular and continuing basis.

The ALJ found that Ms. Weigel's "treating physicians did not place any functional restrictions on her activities that would preclude work activity with the [simple-work] restriction." Aplt. App., Vol. II at 11. But the ALJ actually addressed only an April 2008 report from her treating doctors:

> The claimant was seen for her emotional problems at Family and Children's Services [FCS]. In a Case Assessment Report dated April 4, 2008, Ms. Weigel's case worker wrote that the claimant had paranoia that someone was watching her. But this was not an intensely felt feeling. The focus of her treatment was to improve her mood swings and depression through management coping skills. Her prognosis was stated to be good.

Id. at 13. Ms. Weigel's treatment, however, began in November 2005, and her alleged disability began in October 2005. But the ALJ failed to note that the progress notes prior to April 2008 stated that her progress was slow or that her first treatment plan indicated that she was unable to keep a job due to her depressive symptoms and that anxiety interfered with her daily functioning. Id. at 209-10; id., Vol. III at 276-84. "It [wa]s improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." Hardman v. Barnhart, 362 F.3d 676, 681 (10th Cir. 2004).[4]

_____

[4] We recognize that the ALJ "is not required to discuss every piece of

(continued...)

-6-

The ALJ addressed the February 14, 2006, consulting evaluation by Dr. Crall in more detail than he considered the FCS medical evidence. The ALJ set out some of Ms. Weigel's history as reported to Dr. Crall, the results of testing, and Dr. Crall's diagnosis, which matched the ALJ's findings at step 2. But, again, the ALJ improperly selected which evidence to include in his decision, and did not consider important aspects of Dr. Crall's evaluation concerning Ms. Weigel's ability to work. In specific, the ALJ did not address either Dr. Crall's notation that she believed Ms. Weigel was reliable and honest when Ms. Weigel stated that she quit work at three jobs because of her anxiety, or Dr. Crall's conclusion that Ms. Weigel would not improve in twelve months. Further, the ALJ did not consider Dr. Crall's report that Ms. Weigel's "ability to complete most tasks appropriately and within a timely manner was likely compromised by difficulties sustaining attention."[5] Aplt. App., Vol. II. at 226.

Although the ALJ stated that he had carefully considered the evidence, his decision does not actually demonstrate that he did so. *See Clifton v. Chater*,

[4](...continued)
evidence" when making his decision. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). But he is required to "discuss the uncontroverted evidence he [does] not [] rely upon, as well as the significantly probative evidence he rejects." *Id.* at 1010.

[5]     The vocational expert, at the first hearing, when reading Dr. Crall's report that Ms. Weigel's ability to complete tasks appropriately and timely was compromised by difficulty keeping attention, stated that Ms. Weigel might have trouble keeping a job with that limitation.

79 F.3d 1007,1009-10 (10th Cir. 1996). Because it appears that the ALJ did not consider all of the evidence, he could not properly consider Ms. Weigel's RFC.

Furthermore, the ALJ failed to relate his RFC findings and restriction to simple work to the severe impairments of mood disorder, PTSD, and panic disorder with agoraphobia. He failed to explain how Ms. Weigel could perform simple work at a consistent pace with appropriate concentration and attention, in order to timely complete tasks without interruptions caused by her mental impairments. Although the ALJ decided that Ms. Weigel can work, he did not decide if she could hold a job for a significant period of time in light of her impairments. *See Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994).

Because we cannot meaningfully review the ALJ's decision and because we do not weigh the evidence, we remand to the district court to remand to the Commissioner to consider and discuss the relevant evidence, to provide reasons for accepting or rejecting the evidence, and to apply correct legal standards. *See Clifton*, 79 F.3d at 1009-10.

B. Ability to Perform Work and Credibility

Additionally, Ms. Weigel argues that (1) the ALJ applied incorrect legal standards at step 5 when finding that she can perform work that exists in the national economy; and (2) the ALJ failed to properly evaluate her credibility under the correct legal standards, and the ALJ's findings are not supported by substantial evidence. Because we remand to the district court for further

proceedings to assess Ms. Weigel's RFC, we also must remand for further consideration of her ability to perform work and for re-evaluation of her credibility after fully considering her impairments and when evaluating her RFC, *see Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) ("Since the purpose of the credibility evaluation is to help the ALJ assess a claimant's RFC, the ALJ's credibility and RFC determinations are inherently intertwined.").

## IV. CONCLUSION

The judgment of the district court is VACATED, and the case is REMANDED with directions to remand to the Commissioner for further proceedings addressing Ms. Weigel's RFC, her ability to perform work, and her credibility.

Entered for the Court

Monroe G. McKay
Circuit Judge