**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**September 26, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

MARY A. NORRIS,

        Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Commissioner of the Social Security
Administration,

        Defendant-Appellee.

No. 04-7113
(D.C. No. 03-CV-514-W)
(E.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **O'BRIEN**, **HOLLOWAY**, and **BALDOCK**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Claimant Mary A. Norris appeals the district court's affirmance of the Commissioner's decision denying her Supplemental Security Income benefits

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

(SSI) under Title XVI of the Social Security Act. We have jurisdiction over this appeal pursuant to 42 U.S.C. § 405(g) and 28 U.S.C. § 1291, and we reverse.

This appeal is taken from the denial of Norris's second application for SSI. On June 27, 2000, the Social Security Administration (SSA) denied her first application, which had a protective filing date of April 12, 2000, and Norris pursued the claim no further. Aplt. App. at 12. In her second application, which has a protective filing date of February 18, 2002, Norris alleged disability based on problems with her feet and back, holes in her stomach, numbness in her hands and arms, allergies, hearing problems, surgeries, and depression. *Id.* at 94. The SSA denied her second application initially and upon reconsideration. At step five of the five-step sequential evaluation process, *see Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (explaining five-step sequential process for evaluating claims for disability benefits), an administrative law judge (ALJ) determined that she retained the residual functional capacity (RFC) to perform a limited range of sedentary work that existed in significant numbers in the regional and national economies and denied benefits. The Appeals Council denied review, making the ALJ's decision the Commissioner's final decision. *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

This court reviews "the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether

the correct legal standards were applied." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted).

On appeal, Norris contends that the ALJ erred when he (1) formulated an RFC that did not include all of her physical and mental limitations, and (2) failed to explain the manner in which the vocational expert (VE) deviated from the *Dictionary of Occupational Titles*[1] when identifying other jobs that Norris could perform.

## I. Error in RFC Formulation

The ALJ found that Norris retained the following RFC:

[S]edentary work: except for work requiring sitting longer than 45 minutes at a time or more than occasional stooping, or requiring kneeling or squatting. The claimant can perform simple, routine tasks and maintain attention within customary tolerances, interact appropriately with co-workers and supervisors on a superficial level, and adapt to changes in the work setting.

Aplt. App. at 14. Norris contends that this RFC failed to account for all of her physical and mental limitations.

### A. Physical limitations.

---

[1]     U.S. Dep't of Labor, Employment & Training Admin., *Dictionary of Occupational Titles* (4th ed. 1991).

Norris argues that the RFC assessment does not properly account for her bending and stooping limitations. She first asserts that the ALJ did not state what weight, if any, he assigned to the opinion of Dr. Kilgore, a state agency consultative examiner, concerning back pain and drainage from an old incisional hernia repair. She argues that this violates Social Security Ruling (SSR) 96-6p, which states that an ALJ "may not ignore" the opinions of state agency medical and psychological consultants and "must explain the weight given to the opinions in their decisions." SSR 96-6p, 1996 WL 374180 at *2. She also contends that the ALJ should have discussed the effect of bending and stooping on the incisional drainage, particularly in view of her testimony that this made the drainage worse. She argues that the ALJ erred by not giving the opinion of her treating physician, Dr. Hillis, either substantial weight, as required by *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987), or controlling weight, as required by 20 C.F.R. § 416.927(d)(2).[2] Dr. Hillis treated her for a ventral hernia in 1997-98. Aplt. App. at 219-227.

We disagree that the ALJ ignored Dr. Kilgore's opinion. It is apparent that he relied on it because he reviewed it as part of the medical evidence that supported his RFC determination. *Id.* at 14. We also disagree that the ALJ was

_____

[2]     Although Norris cites to the identical 20 C.F.R. § 404.1527(d)(2) on this point, we note that the regulations applicable to her claim for SSI under Title XVI of the Social Security Act are set forth in 20 C.F.R. Ch. III, part 416. *See* 20 C.F.R. § 416.101.

required to state the weight attributed to the opinions of Dr. Kilgore and Dr. Hillis. An ALJ is required to "review all of the evidence relevant to [a] claim" and "make findings about what the evidence shows." 20 C.F.R. § 416.927(c). "If all of the evidence we receive, including all medical opinion(s), is consistent, and there is sufficient evidence for us to decide whether you are disabled, we will make our determination or decision based on that evidence." *Id.* § 416.927(c)(1). "If any of the evidence in your case record, including any medical opinion(s), is inconsistent with other evidence or is internally inconsistent, we will weigh all of the evidence and see whether we can decide whether you are disabled based on the evidence we have." *Id.* § 416.927(c)(2).

It is clear from the foregoing regulations that, if all of the medical evidence is consistent, the ALJ is not required to state the weight attributed to each opinion, and SSR 96-6p's requirement to state the weight given to the opinions of state agency consultants is inapplicable. Similarly, the ALJ need not determine whether a treating physician's opinion is entitled to either controlling or substantial weight, or weigh it against other consistent, supportive evidence.

Here, the ALJ determined Norris's RFC, then stated that the "medical evidence provides ample support for this conclusion." Aplt. App. at 14. He went on to describe the medical records of her physical impairments in detail, all of which are consistent in that they identify only minimal problems associated with

-5-

her ongoing complaints of incisional drainage.[3]  For example, Dr. Hillis observed prior to her 1997 hernia operation that she "has a draining sinus tract."  *Id.* at 220. After the operation, he observed that she "has a small area of skin which is not healing.  She indicates that she has had pain and drainage since her repair. . . . The wound is well healed other than a 1-2 cm area centrally where there is superficial denuding. . . . [N]o draining sinus tract can be identified."  *Id.* at 219. In 2002, Dr. Kilgore observed that Norris had "a minimal amount of drainage from a small incision" in her abdomen.  *Id.* at 121.  The ALJ's failure to state the specific weight he gave to the opinions of Dr. Kilgore or Dr. Hillis, therefore, was not error.  Nothing in these opinions suggests that the ALJ should have formulated a more restrictive RFC.[4]

We also find no error in the ALJ's failure to mention Norris's testimony that bending increases the pain and drainage from her incisional wound.  An ALJ

---

[3]    Even Norris states that "there is clearly no contradictory medical evidence which would justify rejecting or ignoring the opinions of doctors who had treated Norris in emergency rooms and hospitals."  Aplt. Br. at 16.

[4]    Norris's self-reported history of chronic back pain made worse by bending and stooping is contained in the "History of Present Illness" section of Dr. Kilgore's report.  Aplt. App. at 119.  Therefore, this is not an opinion that the ALJ was required to address.  *See* 20 C.F.R. § 416.927(a)(2) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.").  Contrary to the Commissioner's position, Dr. Hillis's records do contain "medical opinions" because he makes statements that reflect judgments about Norris's symptoms.  *See id.*

is not required to address every piece of evidence. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). "When the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened." *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004). Here, Norris testified that "the more I move the more this [pointing to her wound] gets sore . . . [i]t starts oozing more and more, and it will start having red streaks shoot out of it." Aplt. App. at 43. She also testified that in 1997-98 her doctors told her "not to be lifting or straining anything to aggravate it." *Id.* at 37.

This testimony does not describe disabling pain or any specific limitations on movement or functioning that would require a more restrictive hypothetical than the one the ALJ posed to the vocational expert, which limited her to sedentary work and only occasional forward stooping or bending, *id.* at 51. The ALJ based the physical limitations portion of his RFC determination on the reports of Dr. Kilgore and Dr. Hillis, each of whom identified only minimal problems with drainage from her incisional hernia repair and no functional limitations. Norris has pointed to no other evidence that suggests a more restrictive RFC. Therefore, the ALJ did not need to reject her testimony or weigh it unfavorably in order to determine her RFC or find her not disabled at step five of the sequential evaluation process, and his failure to mention it is not error.

Norris contends that the ALJ erred by failing to address medical records from the Wadley Regional Medical Center. We disagree. Those records, *id.* at

222-27, contain information about her ventral hernia operation in 1997. The ALJ addressed this operation in his discussion of the records of Dr. Hillis, who performed the procedure. The additional records merely recite the details of her procedure and do not undermine the accuracy of the ALJ's RFC finding.

Likewise, we find no error in the ALJ's failure to discuss certain records from McCurtain Memorial Hospital to which Norris directs our attention: a diagnosis of acute myofascial strain and acute lower back pain, *id.* at 165, and an x-ray report indicating mild narrowing of the L5-S1 intervertebral disc space, *id.* at 168. Those records, which contain minimal information, are consistent with Dr. Kilgore's opinion that, among other severe impairments, she has chronic low back pain, which the ALJ considered. Therefore, the ALJ did not need to discuss them. *See Howard*, 379 F.3d at 947. Nothing in the McCurtain records contradicts the RFC found by the ALJ.

**B. Mental limitations.**

Norris asserts that the ALJ failed to indicate the weight he attributed to the opinion of examining state agency consultant Dr. Otero, failed to mention two evaluations performed by Dr. Smallwood, Ph.D, a non-examining state agency consultant, and failed to account in his RFC determination for all the limitations Dr. Otero and Dr. Smallwood found. Although we find that the ALJ did address Dr. Smallwood's evaluations, we agree that he failed to account for them fully in his RFC determination.

Dr. Otero opined that Norris could maintain socially appropriate behavior, apparently despite his diagnosis of panic disorder with agoraphobia. *Id.* at 140. The ALJ noted this opinion twice in his decision, *id.* at 15, 16-17, and it is evident that he relied on it in determining Norris's RFC. Dr. Smallwood concluded that Norris was not significantly limited in her ability to maintain socially appropriate behavior, but that she was moderately[5] limited in her ability to interact appropriately with the general public. *Id.* at 144.

The abilities to interact appropriately with the general public and to maintain socially appropriate behavior are listed on the Mental Residual Functional Capacity Assessment form completed by Dr. Smallwood as separate components of social interaction, *id.* at 144, and thus describe two separate measurements of mental functioning. The ALJ, therefore, did not need to weigh the opinions of Dr. Otero and Dr. Smallwood because they are not inconsistent. However, he erred by failing to address Dr. Smallwood's public-interaction limitation in his hypothetical to the VE and in his RFC determination. *See Clifton*, 79 F.3d at 1010 ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."). This failure is

---

[5]     We note that, in his decision, the ALJ misstated this limitation as marked rather than moderate. Aplt. App. at 15. Although it does not affect our analysis, it renders the ALJ's omission of this limitation from the RFC even more puzzling.

significant because some, if not all, of the jobs identified by the VE appear to require interaction with the general public. Those jobs might have been excluded if the public interaction limitation had been included in Norris's RFC, which might have affected the ALJ's determination at step five of the five-step sequential evaluation process.

## II. Deviation from the *Dictionary of Occupational Titles*

Norris argues that the ALJ erred when he failed to explain the manner in which the VE deviated from the *Dictionary of Occupational Titles* (*DOT*) when identifying jobs that she could perform based on her sedentary RFC. We agree.

We have held that an "ALJ must investigate and elicit a reasonable explanation for any conflict between the [*DOT*] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999). In *Haddock*, we provided two examples of a "reasonable" or "valid" explanation for the conflict between VE testimony and the *DOT*: (1) "the job the VE is testifying about is not included in the [*DOT*], but is documented in some other acceptable source"; and (2) "a specified number or percentage of a particular job is performed at a lower RFC level than the [*DOT*] shows the job generally to require." *Id.* at 1091-92.

In response to our holding in *Haddock*, the SSA issued SSR 00-4p. *See* Rescission of Social Security Acquiescence Ruling 00-3(10), 65 Fed. Reg. 75758,

75758 (Dec. 4, 2000) (discussing the relationship of SSR 00-4p, issued that same day, to *Haddock*). SSR 00-4p requires an ALJ to resolve conflicts between the *DOT* and a VE's testimony "by determining if the explanation given by the VE . . . is reasonable and provides a basis for relying on the VE . . . testimony rather than on the *DOT* information." SSR 00-4p, 2000 WL 1898704, at *2.

Here, the VE stated that the *DOT* listed cashier II in the light exertional category, whereas the "Bureau of Labor Statistics in the 2000 census identifies this job with these numbers existing at the sedentary level as well as the light exertion level." Aplt. App. at 53. This explanation is similar to the second explanation we noted in *Haddock*. *See Haddock*, 196 F.3d at 1091-92. After confirming that the number of cashier II jobs the VE identified was only at the sedentary level, the ALJ admitted that he did not "know enough about the Bureau of Labor Statistics to ask a follow-up question." Aplt. App. at 53. This comment indicates that he accepted the VE's explanation without determining if there was a basis for relying on it, as required by SSR 00-4p.[6] Therefore, the explanation was

---

[6] Because it appears that the VE's source may have been a publication of some sort, the explanation may have been rendered reasonable if the ALJ determined that the source was a reliable publication. *See* SSR 00-4p, 2000 WL 1898704, at *2 (stating that reasonable explanations include those based on information in reliable publications other than the *DOT*). We do not suggest that a reasonable explanation must identify a specific source or be based on a reliable publication, only that, in this case, the ALJ's lack of familiarity with the source on which the VE based his explanation prevented him from making the required reliability determination.

not reasonable, and the ALJ was not entitled to rely on it as substantial evidence in support of his determination of nondisability, s*ee Haddock*, 196 F.3d at 1091.[7]

The district court determined that the ALJ's failure to elicit a reasonable explanation from the VE was not reversible error because the ALJ identified two other jobs, surveillance system monitor (700 to 1000 jobs regionally and 65,000 to 85,000 nationally) and food and beverage order taker (600 jobs regionally and 125,000 nationally), that exist in significant numbers. Aplt. App. at 279-80. Based on our conclusion that the ALJ did not address Dr. Smallwood's opinion properly, we decline to affirm the ALJ's decision on this basis. The ALJ's treatment of Dr. Smallwood's opinion may affect Norris's RFC, which in turn may affect her ability to perform one or both of those jobs. Additionally, it is unclear from the decision whether he found that the numbers of each of those jobs, standing alone, constituted a significant number within the meaning of 42 U.S.C. § 423(d)(2)(A). Given the fairly small number of those two jobs, it may be necessary for the ALJ to give consideration to the factors that should direct an ALJ's resolution of the significant number inquiry. *See Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992). Consideration of these factors

---

[7]    We note that, in his decision, the ALJ erroneously stated that there was no deviation between the VE's testimony and the *DOT*. Aplt. App. at 18. Because we conclude that the ALJ failed to elicit a reasonable explanation from the VE at the hearing, we need not reach his additional failure to "explain in the determination or decision how he . . . resolved the conflict." SSR 00-4p, 2000 WL 1898704, at *4.

may be particularly important in view of the ALJ's finding that Norris cannot sit for more than forty-five minutes at a time, which may preclude her from driving long distances to work.

## Conclusion

In summary, we conclude that the ALJ applied the correct legal standards in determining the physical limitations on Norris's RFC, and those limitations were supported by substantial evidence. However, he applied the incorrect legal standards in determining the mental limitations on Norris's RFC and in relying on the VE's testimony concerning the cashier II job. On remand, the ALJ must address Dr. Smallwood's opinion concerning the limitations on Norris's ability to interact with the general public. The ALJ also must elicit a reasonable explanation for the conflict between the VE's testimony and the *DOT* concerning the exertional level of the cashier II jobs, unless Dr. Smallwood's opinion alters the RFC and the VE's testimony concerning whether Norris can perform that job. He also should explain in his decision how he resolved that conflict.

The judgment of the district court is **REVERSED**, and the case is **REMANDED** to the district court with directions to remand the case to the agency for further proceedings consistent with this Order and Judgment.

Entered for the Court

William J. Holloway
Circuit Judge

-13-