**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 30, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

JOHN W. CONGER,

Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE, Commissioner
of the Social Security Administration,

Defendant-Appellee.

No. 11-5046
(D.C. No. 4:10-CV-00102-TCK-TLW)
(N.D. Okla.)

**ORDER AND JUDGMENT***

Before **LUCERO**, **ANDERSON**, and **GORSUCH**, Circuit Judges.

John W. Conger appeals from the denial of his application for supplemental

security income benefits under Title XVI of the Social Security Act. We have

jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291, and we affirm.

---

\* After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I.  Background

Because the parties are familiar with the facts, we only briefly summarize them.  Mr. Conger applied for benefits in December 2005, alleging he was unable to work because of degenerative disk disease, spondylosis, arthritis, depression, and problems sleeping.  His application was denied at the administrative level after a hearing before an administrative law judge (ALJ).  The ALJ found that Mr. Conger's impairments of degenerative disc disease, depression and alcohol abuse were severe but that none of his impairments, either alone or in combination, met or equaled one of the listings.  Aplt. App., Vol. II at 43.  The ALJ further found that Mr. Conger had the residual functional capacity (RFC) to perform simple and routine medium exertional work that required no more than occasional stooping and no contact with the public.  *Id.* at 44.

A vocational expert (VE) testified at the hearing that Mr. Conger could still perform work existing in significant numbers in the national economy, including as examples, hand packer, dishwasher, bench assembler, motel housekeeper, and semiconductor assembler.  *Id.* at 75-78.  Relying on this testimony and medical opinions, the ALJ denied benefits at step five of the sequential evaluation process.  *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing five-step evaluation process).

After the Appeals Council denied his request for review, Mr. Conger filed his complaint in the district court.  The district court adopted the report and

recommendation of the magistrate judge and affirmed the Commissioner's denial

of benefits. Mr. Conger now appeals.

## II. Discussion

> In reviewing the ALJ's decision, we neither reweigh the evidence nor
> substitute our judgment for that of the agency. Instead, we review
> the ALJ's decision only to determine whether the correct legal
> standards were applied and whether the ALJ's factual findings are
> supported by substantial evidence in the record. Substantial evidence
> is such relevant evidence as a reasonable mind might accept as
> adequate to support a conclusion. A decision is not based on
> substantial evidence if it is overwhelmed by other evidence in the
> record or if there is a mere scintilla of evidence supporting it.

*Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (citations and internal

quotation marks omitted). Mr. Conger raises four issues: whether the ALJ

properly (1) evaluated the medical source opinions; (2) assessed his RFC;

(3) found that he could perform other work; and (4) evaluated his subjective

complaints. Mr. Conger also asserts claims of error by the magistrate judge. We

independently review whether the ALJ's decision is free from legal error and

supported by substantial evidence. *See Wall*, 561 F.3d at 1052. Thus, although

we have considered these arguments in the context of evaluating his claims that

the ALJ erred, we do not specifically address his claims alleging error by the

magistrate judge.

## A. Consideration of Medical Source Opinions

Mr. Conger relied, among other things, on a report from his case worker at

Family and Children Services (FCS), Nicole Hudson, who saw him in connection

with his mental health treatment. Ms. Hudson, who is not a physician and has only a bachelor of arts degree, submitted a medical source statement that Mr. Conger was "moderately limited" in his ability to work with others without being unduly distracted, accept instructions and criticisms from supervisors, get along with co-workers, respond appropriately to changes in a routine work setting, and deal with normal work stress. Aplt. App., Vol. III at 518. According to Mr. Conger, the ALJ erred in giving little weight to Ms. Hudson's statement.

In his opinion, the ALJ considered Ms. Hudson's statement in its entirety. *Id*., Vol. II at 47-48. He gave three reasons for giving her statement little weight: (1) it appeared Ms. Hudson relied on Mr. Conger's own descriptions of his symptoms and limitations, which the ALJ determined were not fully credible; (2) the physician at FCS would not sign off on Mr. Conger's requested Medical Source statement because she had only treated him for a limited period of time; and (3) the medical treatment Mr. Conger received at FCS was not consistent with a disabling mental condition. *Id*. at 51.

A mental health case worker, such as Ms. Hudson, is not an acceptable medical source, as defined in 20 C.F.R. § 416.913(a). Instead, she is classified as an "other source" whose evidence can be considered to show the severity of a claimant's impairment and how it affects his ability to work. *Id*. § 416.913(d). Opinion evidence from "other sources" is evaluated using the factors outlined in 20 C.F.R. § 416.927(d), as explained in further detail in Social Security Ruling

06-03p, 2006 WL 2329939 (Aug. 9, 2006). The factors include: (1) the length of time the source has known the claimant and how frequently the source has seen the claimant; (2) the consistency of his opinion with other evidence; (3) whether there is there relevant evidence to support the opinion; (4) how well the opinion is explained; (5) the source's qualifications; and (6) any other factors that tend to support or detract from the opinion. SSR 06-03p, 2006 WL 2329939, at *4-5. (applying factors in 20 C.F.R. § 416.927(d), used to evaluate opinion evidence from acceptable medical sources, to opinion evidence from other sources).

The ALJ did state that he had considered all of the medical source testimony in accordance with the requirements of the applicable Social Security regulations. The ALJ did not expressly mention SSR 06-03p, or the factors articulated therein, but we do not require an explicit discussion of the factors in a decision. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). The regulations require an ALJ to "give good reasons" in a decision as to the weight applied to a treating physician's opinion. 20 C.F.R. § 416.927(d)(2). But to trigger this requirement, Ms. Hudson must have been a treating physician. Because she was not, the ALJ did not have to explain the reasons for the weight he gave Ms. Hudson's opinion, although he did so; instead he need only have considered the opinion, which he also did. *See Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003).

Substantial evidence supports the ALJ's finding that Ms. Hudson's opinion

about Mr. Conger's limitations was not consistent with the routine care

Mr. Conger received at FCS.  *See* Aplt. App., Vol. III at 291-373, 453-83, 520-39,

555; *see also* 20 C.F.R. § 416.927(d)(4) (consistency with the record as a whole)

and SSR 06-03p, 2006 WL 2329939, at *4 (same).  Further, Ms. Hudson's

opinion was unsupported by any explanation or any medical or clinical findings.

*See* Aplt. App., Vol. III at 518-19; *see also* 20 C.F.R. § 416.927(d)(3) (support for

opinion) and SSR 06-03p, 2006 WL 2329939, at *4 (degree to which the source

presents relevant supporting evidence and how well the source explains the

opinion).  This, together with the evidence that Ms. Hudson's opinion is not

consistent with the medical record as a whole, supports the ALJ's finding that

Ms. Hudson's opinion appeared to be based on Mr. Conger's subjective

complaints.  Thus, we conclude that the ALJ's analysis of Ms. Hudson's opinion

is supported by substantial evidence and free from legal error.[1]

Mr. Conger also argues that the ALJ failed to explain why he gave great

weight to the state agency medical consulting physicians and psychologists'

assessment of his limitations.  Regulations require that an ALJ consider the

---

[1]     Given this holding, we need not consider Mr. Conger's assertion that the
VE testified that Mr. Conger would not be able to maintain employment if he had
the work limitations described by Ms. Hudson.  Moreover, Mr. Conger misstates
the VE's testimony, who testified that an individual with such limitations "may"
have some problems keeping a job, but would be able to get a job, and that these
limitations would not preclude employment.  Aplt. App., Vol. II at 80-81.

opinions of non-examining physicians, including state agency psychological consultants. 20 C.F.R. § 416.927(f). Contrary to Mr. Conger's assertion, the ALJ did explain why he gave these opinions great weight, stating he did so because their medical evidence and opinions were consistent with the overall evidence of Mr. Conger's RFC and because the agency physicians are experts in assessing the physical and mental limitations that reasonably flow from a medical condition. Mr. Conger contends these consulting opinions were not based on a complete review of the evidence, but we find no record support for this assertion.

Accordingly, we conclude the ALJ properly considered the medical source testimony, including the other source opinion of Ms. Hudson.

## B. RFC Determination

Mr. Conger next claims that the ALJ's RFC determination is flawed because, although the ALJ summarized all of the medical and non-medical evidence, he failed to identify specifically the evidence that he relied upon to reach his RFC determination. We disagree, holding that the ALJ's discussion of the evidence and his reasons for his RFC determination demonstrate that he considered all of Mr. Conger's impairments and that his RFC determination was supported by substantial evidence.

In his decision, the ALJ wrote nearly seven pages about the evidence he considered in reaching his RFC determination. Aplt. App., Vol. II at 44-51. The ALJ stated that he reached his RFC determination "[a]fter careful consideration of

the entire record." *Id.* at 44. An ALJ is not required to discuss every piece of evidence so long as the record demonstrates that he considered all of the evidence. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). We will generally find the ALJ's decision adequate if it discusses the "uncontroverted evidence" the ALJ chooses not to rely upon and any "significantly probative evidence" the ALJ decides to reject. *Id.* at 1010. "Where, as here, the ALJ indicates he has considered all the evidence our practice is to take the ALJ at his word." *Wall*, 561 F.3d at 1070 (internal quotation marks and alteration omitted)

In particular, Mr. Conger argues the ALJ failed to explain how he determined that Mr. Conger could perform medium exertional activity, which requires lifting fifty pounds and standing or walking for approximately six hours in an eight-hour day, given that Mr. Conger testified he could not lift more than eight pounds and could only walk for fifteen minutes before needing to rest. Mr. Conger further argues the ALJ's RFC determination did not take into account his complaints of arm and hand numbness and shoulder pain and his testimony that he could not grasp objects with his non-dominant left hand.

The evidence that Mr. Conger cannot lift more than eight pounds and can only walk for fifteen minutes are based on Mr. Conger's own testimony. The ALJ's credibility determination of Mr. Conger's subjective complaints informs our review of the ALJ's conclusions as to Mr. Conger's RFC. *See Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) ("Since the purpose of the

credibility evaluation is to help the ALJ assess a claimant's RFC, the ALJ's credibility and RFC determinations are inherently intertwined."). As discussed in Part D below, the ALJ found that Mr. Conger's subjective complaints were not fully credible and we conclude his credibility determination is supported by substantial record evidence.

It is clear that the ALJ based his RFC in part upon the findings of the state-agency medical consultant Dr. Mungul, who opined that Mr. Conger could perform medium exertional work and could occasionally lift fifty pounds, frequently lift twenty-five pounds, stand and walk for six hours in an eight-hour work day. Aplt. App., Vol. III at 446-47. The ALJ further relied upon the evidence from Dr. Nodine, who found, after a physical examination, that Mr. Conger's straight leg test was negative in both the supine and sitting position, that he had normal heel and toe walking, was able to heel and toe walk normally and walked at a normal and steady gait without an assistive device. *Id.* at 412, 414-16. Further, the ALJ mentioned records from FCS noting that Mr. Conger walked two miles to and from his medical appointment. Aplt. App., Vol. II at 47. The ALJ's RFC assessment is consistent with, and supported by, this evidence.

Mr. Conger notes that Dr. Nodine documented reduced flexion of his left thumb and right wrist, and reduced range of motion in his neck. He argues the ALJ failed to consider these limitations. Contrary to Mr. Conger's description of Dr. Nodine's report, Dr. Nodine documented only slightly reduced range of

motion in Mr. Conger's neck, back, right wrist and left thumb, but full range of motion in all other joints, and Dr. Nodine stated that Mr. Conger had full bilateral grip strength and could effectively oppose his thumb to his fingertips, manipulate small objects and effectively grasp tools such as a hammer. Aplt. App., Vol. III at 412-16. We conclude that the ALJ's RFC determination was based upon an adequate consideration, and accurate discussion, of Dr. Nodine's findings.

As to his mental impairments, Mr. Conger argues the ALJ failed to consider the findings of Dr. Rawlings, who noted that his activities of daily living and social functioning were limited by chronic pain, depression and fatigue. Again, Mr. Conger only partially describes Dr. Rawlings' findings. In quantifying the degree of these limitations, Dr. Rawlings assigned Mr. Conger a Global Assessment of Functioning score of 55-65, *id*. at 424, which indicates his finding that Mr. Conger's limitations caused no more than mild to moderate difficulty. *See* Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32-34 (4th ed. 2000). Further, Dr. Rawlings found that Mr. Conger's recent and remote memory, mental control, attention span, working memory, judgment and insight into problems were all intact. Aplt. App., Vol. III at 423. The ALJ considered Dr. Rawlings' report at length, *id*., Vol. II at 48, and his RFC findings of moderate restrictions of Mr. Conger's activities of daily living and social functioning are consistent with, and supported by, Dr. Rawlings' evidence.

We find no error in the ALJ's RFC finding. The ALJ's decision contains a discussion of the medical evidence he considered in finding that Mr. Conger retained the RFC to perform simple and routine medium exertional work that requires no more than occasional stooping, and no contact with the public. Our review of the record indicates that this RFC determination is consistent with the medical evidence, and thus, that the ALJ's finding is supported by substantial evidence.

## C. Perform Other Work

Mr. Conger next claims that the ALJ erred in finding that he could perform other work in the national economy. He asserts that there are some conflicts between the VE's testimony and the Dictionary of Occupational Titles (DOT) and, therefore, the ALJ erred in relying upon the VE's testimony without first resolving the conflicts. "If the ALJ concludes that the claimant cannot perform any of his past work with his remaining RFC, the ALJ bears the burden at step five to show that there are jobs in the regional or national economies that the claimant can perform with the limitations the ALJ has found him to have." *Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999). "[T]he ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Id*. at 1091.

The government concedes that there is an apparent conflict between the ALJ's RFC determination and the VE's testimony that Mr. Conger could work as a dishwasher and a semiconductor assembler and that the ALJ should have elicited testimony from the VE about these apparent conflicts. The government concedes that dishwasher job requires frequent stooping and the semiconductor assembler job requires a reasoning level of three, and that these requirements do not appear to be consistent with Mr. Conger's RFC.

We conclude, however, that no remand is necessary. The VE explicitly stated that other occupations would be available to an individual with Mr. Conger's RFC and that she was simply providing occupational examples. Aplt. App., Vol. II at 76. Thus, her testimony was not intended to provide a complete list of occupations available to an individual with Mr. Conger's limitations. In addition to the dishwasher and semiconducter assembler examples, the VE also identified the jobs of hand packer, bench assembler and motel housekeeper. *Id*. at 78. Inconsistencies are not present as to these other examples of jobs that the VE listed. The VE testified that nationally there are approximately 265,000 hand picker jobs, 600,000 bench assembler jobs and 180,000 motel housekeeper jobs. *Id*. at 76. The evidence of these occupations is sufficient for the ALJ to find that Mr. Conger can perform specific occupations encompassing a significant number of available jobs. *See Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995) (citing 20 C.F.R. § 404.1566(b) ("Work exists

in the national economy [for step-five purposes] when there is a *significant number of jobs* (in *one or more occupations*) having requirements which [the claimant is] able to meet . . . .") (emphasis added)).

We further find, contrary to Mr. Conger's assertion, that in asking hypothetical questions to the VE, the ALJ did incorporate all of the mental functioning limitations found by the state agency mental consultants. *Compare* Aplt. App., Vol. II at 75, 77 (hypothetical questions) *with id*. at Vol. III at 443, 516 (assessment of Mr. Conger's mental RFC). We conclude that Mr. Conger has not demonstrated that the ALJ erred in concluding that there were a significant number of jobs he could perform in the national economy.

D. Credibility Determination

Finally, Mr. Conger argues that the ALJ failed to perform a proper credibility determination. "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). Credibility findings must "be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (internal quotation marks omitted). Factors the ALJ may consider in assessing a claimant's complaints include "the levels of medication and their effectiveness, the extensiveness of the attempts . . . to obtain relief, the frequency of medical contacts, the nature of

-13-

daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, . . . and the consistency or compatibility of nonmedical testimony with objective medical evidence." *Id*.

The ALJ found that Mr. Conger's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the [already established] residual functional capacity assessment." Aplt. App., Vol. II at 46. The ALJ then discussed all of the factors and evidence he relied upon in discounting Mr. Conger's credibility. *Id*. at 46-51. The ALJ recited all of the medical treatment notes and medical records and concluded that they did not support Mr. Conger's subjective complaints. The ALJ noted discrepancies between Mr. Conger's alleged symptoms and the objective documentation in the record. The ALJ noted Dr. Rawlings' observation that Mr. Conger gave self-contradictory statements during his psychological examination. Mr. Conger reported that he could not walk more than one or two blocks without resting, but the ALJ noted that he told his doctor that he walked two miles to his appointment and that Dr. Nodine and Dr. Jennings both found that Mr. Conger was able to walk normally without an assistive device. The ALJ further noted that Mr. Conger received essentially routine and conservative medical care, which was not indicative of disabling impairments. *See Wall*, 561 F.3d at 1068-69 (holding that a history of conservative medical treatment undermines allegations of disabling symptoms).

-14-

Mr. Conger challenges the ALJ's statement that his "allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty." Aplt. App., Vol. II at 49. Mr. Conger argues that no ruling or regulations require such verification. It is true that 20 C.F.R. § 416.929(c)(3)(i) does not require verification; instead the regulations simply state that such evidence will be evaluated "in relation to the objective medical evidence and other evidence." 20 C.F.R. § 416.929(c)(4). In *Wall*, we determined that the statement that a limitation was not objectively verified was merely the ALJ's "common sense observation that [he] would not treat Claimant's testimony as 'strong evidence' of her disability due to his prior determination that Claimant's testimony was not 'fully credible.'" *Wall*, 561 F.3d at 1070. As such, we rejected the claimant's assertion "that the ALJ evaluated Claimant's credibility under an improper [objectively-verified] standard." *Id.* at 1069. The same is true here and we find that the ALJ did not impose an incorrect standard of proof in evaluating Mr. Conger's credibility. Our independent review of the record reveals that the ALJ closely and affirmatively linked his credibility determination to substantial record evidence and that substantial evidence supports that determination.

The judgment of the district court is AFFIRMED.

Entered for the Court

Stephen H. Anderson
Circuit Judge